ACCEPTED
15-24-00132-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 4:34 PM
CHRISTOPHER A. PRINE
CLERK

## No. 15-24-00132-CV

# IN THE COURT OF APPEALS FOR THE
# FIFTEENTH JUDICIAL DISTRICT OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 4:34:50 PM
CHRISTOPHER A. PRINE
Clerk

AIRW 2017-7, L.P.; 600 WESTINGHOUSE INVESTMENTS, LLC; 800 WESTINGHOUSE INVESTMENTS, LLC; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; AND JONAH WATER SPECIAL UTILITY DISTRICT

*v.*

CITY OF GEORGETOWN

On Appeal from the 261st District Court of Travis County, Texas,
Cause No. D-1-GN-23-001004

# REPLY BRIEF OF APPELLANT
# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

WILLIAM PETERSON
Solicitor General

WILLIAM F. COLE
Principal Deputy Solicitor General

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

SARA J. FERRIS
Assistant Attorney General
State Bar No. 50511915
Sara.Ferris@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

COUNSEL FOR THE TEXAS
COMMISSION ON
ENVIRONMENTAL QUALITY

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................ii

INDEX OF AUTHORITIES...................................................................v

GLOSSARY OF TERMS AND ABBREVIATIONS ..............................viii

RECORD REFERENCES ......................................................................x

ISSUES PRESENTED (RESTATED).........................................................xi

ARGUMENT .....................................................................................3

I.    The Commission's regionalization determination is
      consistent with Texas regionalization policy. The
      City's contention to the contrary demonstrates its
      disappointment with the law as written and with
      granting AIRW's permit but does not demonstrate
      reversible legal error. ...................................................................3

      A.    The City invites the Court to create
            prerequisites that the Legislature did not.
            Formal municipal denial is not a required for
            compliance with regionalization policy..................................4

            i.    Texas courts, including in *The Commons
                  of Lake Houston* makes clear that
                  municipal formalities are not
                  determinative of parties' rights to
                  progress through the judicial (or
                  administrative) process.................................................6

            ii.   *Whittington* does not apply here.................................7

      B.    The City misinterprets the plain language of
            the statute's policy and regionalization
            provisions. ...........................................................................8

i. The City misreads the plain language of Texas's policy on water quality.....................................8

ii. The City misreads section 26.0282 and improperly attempts to restrict the discretion granted to the Commission by the Legislature. ..........................................11

iii. The City's cost concept is unduly narrow and inappropriately restricts the Commission's discretion in considering regionalization.............................................12

iv. The Commission's Order is based on substantial evidence...................................17

C. The Commission properly exercised its discretion and appropriately considered regionalization...................................................19

i. The Commission did not abuse its discretion or inappropriately consider irrelevant facts or non-statutory criteria in reaching Finding of Fact No. 45. ...........................20

ii. The Commission did not act arbitrarily or fail to consider relevant facts or mandatory factors. ......................................21

iii. The Commission's Order complies with all statutory requirements.........................23

II. The City provides no valid basis for finding reversible error. The Commission properly exercised its authority, ensuring that Texas water quality standards are met and granting the permit in an order supported by substantial evidence.......................................24

A. The City failed to overcome evidence supporting the application with credible controverting evidence. ........................................................25

B. The City's arguments regarding the sufficiency of AIRW's application provide no basis for reversal here.........................................................31

CONCLUSION AND PRAYER............................................................34

CERTIFICATE OF COMPLIANCE....................................................36

CERTIFICATE OF SERVICE.............................................................36

# INDEX OF AUTHORITIES

**Cases**

*Boerne to Bergheim Coal. for Clean Env't v. Texas Comm'n*
*on Envtl. Quality*,
657 S.W.3d 382 (Tex. App.—El Paso 2022, no pet.) ........................7

*City of Austin v. Whittington*,
384 S.W.3d 766 (Tex. 2012).........................................................7, 12

*City of El Paso v. Pub. Util. Comm'n of Texas*,
883 S.W.2d 179 (Tex. 1994).............................................................22

*In re Dallas County,*
697 S.W.3d 142 (Tex. 2024).............................................................8

*N. E. Indep. Sch. Dist. v. Riou*,
598 S.W.3d 243 (Tex. 2020).............................................................15

*R.R. Comm'n of Texas v. City of Austin*,
524 S.W.2d 262 (Tex. 1975).............................................................15

*Sanchez v. State,*
499 S.W.3d 438 (Tex. Crim. App. 2016)...........................................9

*Save Our Springs All., Inc. v. Texas Comm'n on Envtl.*
*Quality*,
713 S.W.3d 308 (Tex. 2025), reh'g denied (June 20,
2025) .................................................................. 17, 18, 19, 22, 23

*State v. Hollins*,
620 S.W.3d 400 (Tex. 2020).............................................................8

*Sw. Pub. Serv. Co./Pub. Util. Comm'n of Texas v. Pub. Util.*
*Comm'n of Texas*,
962 S.W.2d 207 (Tex. App.—Austin 1998, pet. denied)...................2

*Tex. Utils. Elec. Co. v. Pub. Util. Comm'n,*
 881 S.W.2d 387 (Tex. App.—Austin 1994), aff'd in
 relevant part, 935 S.W.2d 109 (Tex. 1996) ....................................21

*Texas Comm'n on Envtl. Quality v. Maverick Cnty.,*
 642 S.W.3d 537 (Tex. 2022)............................................ 2, 20, 21, 34

*Texas Comm'n on Envtl. Quality v. San Antonio Bay
 Estuarine Waterkeeper,*
 714 S.W.3d 270 (Tex. App.—[15th] 2025, pet. filed) .....................19

*Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.,*
 665 S.W.2d 446 (Tex. 1984)......................................... 18, 19, 22, 23

*TGS-NOPEC Geophysical Co. v. Combs,*
 340 S.W.3d 432 (Tex. 2011).............................................................29

*The Commons of Lake Houston, Ltd. v. City of Houston,*
 711 S.W.3d 666 (Tex. Mar. 21, 2025) ...............................................6

*TJFA, L.P. v. Texas Comm'n on Envtl. Quality,* 632 S.W.3d
 660 (Tex. App.—Austin 2021, pet. denied) ......................................8

**Constitution & Statutes**

Texas Const. Art. 2, § 1 .........................................................................2

Tex. Gov't Code

 § 311.011(a) ...............................................................................29
 § 311.021(a) .................................................................................9
 §§ 2001.001-.903...............................................................viii, 1
 § 2001.060 ...................................................................................24
 § 2001.141(c)...............................................................................24
 § 2001.173...................................................................................17
 § 2001.174...................................................... 1, 2, 17, 18, 20, 21
 § 2001.174(2)(E)..........................................................................18
 § 2001.174(2)(F)..........................................................................19
 § 2003.047(e)...............................................................................24
 § 2003.047(f) ...............................................................................24

§ 2003.047(i-1)-(i-2) ....................................................... 26
§ 2003.047(i-1)-(i-3) ....................................................... 13
§ 2003.047(l) .................................................................... 24
§ 2003.047(m) ................................................................. 24

Tex. Water Code

§ 13.241(d) ...................................................................... 10
§ 26.003.......................................................... 3, 4, 5, 8, 9, 23
§ 26.023............................................................... 4, 5, 27
§ 26.027............................................................. 4, 5, 6, 22
§ 26.0282.................................... 3, 4, 5, 6, 11, 12, 20, 23
§ 26.030.......................................................................... 29
§ 26.030(b) ...................................................................... 29
§ 26.081................................................................ 3, 4, 5, 10

## Rules

30 Tex. Admin. Code

§ 305.43............................................................................ 33
§ 305.64(a) ...................................................................... 32
§ 307.3(a)(67) ................................................................. 27
§ 307.5............................................................................. 27
§ 307.5(b) ........................................................................ 28
§ 319.9(a) ........................................................................ 27
ch. 351.............................................................................. 10

## Other Authorities

Acts 2013, 83rd Leg., ch. 170 (H.B. 1600), § 2.42, eff. Sept.
    1, 2013 ....................................................................... 10

Adam Hayes, *Fixed Cost: What it is and How its Used in
    Business*, Investopedia (May 22, 2025)........................... 14

Tejvan Pettinger, *Types of Costs,* Economics Help (June 1,
    2019) ........................................................................... 14

# GLOSSARY OF TERMS AND ABBREVIATIONS

| Term | Meaning |
|---|---|
| AIRW | Appellant AIR-W 2017-7, L.P., the applicant in the TCEQ contested case, Intervenor in District Court |
| APA | Administrative Procedure Act, Tex. Gov't Code §§ 2001.001–.903 |
| Application | AIR-W 2017-7 L.P.'s application for a new TPDES permit in TCEQ Docket No. 2021-1214-MWD |
| AR | Administrative Record. Contained within the SCR. |
| CCN | Certificate of Convenience and Necessity |
| City | Appellee City of Georgetown |
| Commission | Appellant Texas Commission on Environmental Quality (Commission or TCEQ) |
| COL | Conclusion of Law |
| CR | Clerk's Record; *See also* SCR |
| ED | Executive Director of the Texas Commission on Environmental Quality |
| FOF | Finding of Fact |
| IPs | Implementation Procedures for the Texas Surface Water Quality Standards |
| Jonah | Appellant Jonah Water Special Utility District, Intervenor in District Court. |
| NSSA | Non-Standard Service Agreement |
| Order | TCEQ's final order, issued November 28, 2022 |
| Permit | AIRW-7's wastewater permit. TPDES Permit Number WQ0015878001 (SCR-AR 66 at 18-52) |
| PFD | Proposal for Decision |

| | |
|---|---|
| RR | Reporter's Record |
| SCR | Supplemental Clerk's Record. The SCR contains the Administrative Record |
| TCEQ | Texas Commission on Environmental Quality (Commission) |
| TPDES | Texas Pollutant Discharge Elimination System |
| Westinghouse Entities | Appellants 600 Westinghouse Investments, LLC and 800 Westinghouse Investments, LLC |

## RECORD REFERENCES

**Reporter's Record**

The Reporter's Record is cited in this brief as "RR [page number]."

**Clerk's Record**

The Clerk's Record is cited in this brief as "CR [page number]."

**Supplemental Clerk's Record and the Administrative Record**

The Administrative Record (AR) consists of three components—administrative documents, evidentiary exhibits, and transcripts. The AR was entered into evidence in the district court proceedings as Joint Exhibit 1. RR at 5. The Supplemental Clerk's Record (SCR) contains the AR (Joint Exhibit 1), the contents of which have item numbers assigned. Citations to the AR will be to SCR-AR [item number] (Example: SCR-AR 11 (ED's Response to Public Comment) at 1).

## ISSUES PRESENTED (RESTATED)

1. Did the district court err in reversing the final order of the Commission based upon the Commission's regionalization determination?

2. Was the final order of the Commission granting AIRW's wastewater permit supported by substantial evidence and based upon applicable law and reasoned decision-making?

To The Honorable Fifteenth Court of Appeals:

The City of Georgetown (City) provide no basis for this Court to find the Commission committed reversible error in granting AIRW 2017-7, L.P's (AIRW's) wastewater permit. Instead, the City's argument urges this Court to adopt a new, a strained interpretation of regionalization policy—one the agency charged with its determination did not. However, like the district court, the City misses a fundamental fact: the Legislature did not require the Commission to deny the City's wastewater permit to be consistent with regionalization, and the City has cited to no statutory authority providing otherwise.

The City simply disagrees with the Commission's decision, disputing the evidence the Commission determined was persuasive and now improperly requests this Court to re-weigh the evidence before it. The City's argument goes beyond the scope of review afforded to agency decisions under the Administrative Procedure Act.[1] Tex. Gov't Code § 2001.174. "When applying the substantial-evidence rule, 'a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion.'"

---

[1] Administrative Procedure Act (APA) Tex. Gov't Code §§ 2001.001-.903.

1

*Texas Comm'n on Envtl. Quality v. Maverick Cnty.*, 642 S.W.3d 537, 544 (Tex. 2022) (quoting Tex. Gov't Code § 2001.174).

The final order of the Texas Commission on Environmental Quality (Commission) is a valid exercise of the Commission's discretion and is consistent with the plain language of the Texas Water Code and Commission rules. *See* SCR-AR 66. The Order expressly relies on the applicable legal standards for permit issuance and is wholly supported by substantial evidence. Nothing more is required of the Commission, and the district court's reversal of the Order is error. The Commission properly concludes that all legal and technical requirements are met and that the permit will protect human health and safety, the environment, and physical property. The district court's re-weighing of the evidence is improper and is a violation of the doctrine of separation of powers. Texas Const. Art. 2, § 1; Tex. Gov't Code § 2001.174; *Sw. Pub. Serv. Co./Pub. Util. Comm'n of Texas v. Pub. Util. Comm'n of Texas*, 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied).

Accordingly, this Court should reverse the district court's judgment and affirm the Commission's Order granting the permit.

## ARGUMENT

I. **The Commission's regionalization determination is consistent with Texas regionalization policy. The City's contention to the contrary demonstrates its disappointment with the law as written and with granting AIRW's permit but does not demonstrate reversible legal error.**

The City contends that the Commission committed reversible error in granting AIRW a wastewater permit rather than requiring connection to the City's facilities. However, this determination is entirely within the Commission's jurisdiction to make. The Commission acted as the Texas Water Code allows and properly considered relevant factors in determining that the permit is consistent with regionalization policy. *See* Tex. Water Code §§ 26.003, 26.0282, 26.081.

The issue of regionalization for wastewater treatment is largely a policy decision without significant statutory direction. The Texas Water Code requires the Commission to encourage and promote regionalization but not to require it. *See* Tex. Water Code §§ 26.003, 26.0282. 26.081. The statute's regionalization provisions are permissive and do not provide any specifics for conducting an evaluation of individual permit applications, leaving this exercise to the Commission in its discretion. *See* Tex. Water Code §§ 26.003, 26.0282, 26.081.

The City's brief raised no new issues regarding the Commission's regionalization determination.

**A. The City invites the Court to create prerequisites that the Legislature did not. Formal municipal denial is not a required for compliance with regionalization policy.**

The City incorrectly argues that AIRW did not meet the statutory prerequisites for wastewater permitting. City's Br. at 2, 25. This argument adds requirements for approval that are not present. The City's vision of regionalization policy goes beyond what the law requires and unreasonably restricts the Commission's discretion and authority under the policy. The Commission—and only the Commission—is authorized to originally hear and decide whether granting a permit is consistent with regionalization policy. Tex. Water Code §§ 26.003, 26.027; 26.0282, 26.081; s*ee also* Tex. Water Code § 26.023 ("The commission . . . has the sole and exclusive authority to set water quality standards for all water in the state"). This is the regulatory scheme created by the Legislature; the Texas Water Code does not—explicitly or implicitly— require a formal denial from the City of Georgetown in order for the permit to be consistent with regionalization or for the Commission to

4

consider AIRW's application and issue the requested permit. Tex. Water Code §§ 26.003, 26.023, 26.027; 26.0282, 26.081.

Further, nothing requires the Commission to formally deny the City's annexation or waiver of annexation request before a permit can be approved by the Commission, and the City has cited to no authority to demonstrate the contrary.

The City's hyperfocus on its own decision-making authority over annexation loses sight of the fact that a developer's inquiry into the availability of wastewater service from the City is but one consideration the Commission has the discretion to consider when exercising its authority over wastewater permits. *See* Tex. Water Code § 26.0282.

A municipal decision of whether to require annexation and land use changes as a condition of agreeing to serve the planned development is not—and should not be construed as—a condition-precedent to waste water permitting. Instead, it is a fact/factor properly within the Commission's consideration when determining need and availability when granting a permit. *See* Tex. Water Code § 26.0282; SCR-AR 98. And the Commission acted properly in treating it as such.

> **i.** **Texas courts, including in *The Commons of Lake Houston* makes clear that municipal formalities are not determinative of parties' rights to progress through the judicial (or administrative) process.**

The Texas Water Code does not limit availability considerations in the manner the City advocates. Tex. Water Code § 26.0282. No formal denial from the City or its council is required for the Commission to properly determine that AIRW's permit is needed and complies with regionalization policy. Tex. Water Code § 26.0282. Actions and positions taken by a city can indicate a final decision has been made, even without a formal determination. *See The Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 685 (Tex. Mar. 21, 2025). Regardless, what the Georgetown decided about providing wastewater service to the planned development in this case is not determinative of whether the wastewater permit should be issued. The "final and authoritative determination" on a wastewater permit (including considering regionalization) turns on the *Commission's* decision—just as the Legislature envisioned. *See* Tex. Water Code §§ 26.027, 26.0282; *The Commons of Lake Houston* at 684.

### ii. *Whittington* does not apply here.

The City argues that there can be no denial or unavailability of service unless its city council formally acts. City's Brief at 19, 24. To support its stance, the City cites to *City of Austin v. Whittington*, 384 S.W.3d 766, 785 (Tex. 2012) an inverse-condemnation case where the Court considered whether the city council's determination of necessity was fraudulent. The Texas Supreme Court stated that to make such a determination, "we look to official materials such as orders, resolutions, and minutes." *Id.*

But municipal action or inaction is peripheral to the question before *this* Court. The Court should look to confirm that the Commission has made all required considerations and acted rationally, based upon substantial evidence. "The breadth of the word 'consider' in [the statute] limits our obligation to scrutinize TCEQ's conduct . . . . The Court's job is to determine **whether** TCEQ took into account the [required consideration], not **how much** they considered it." *Boerne to Bergheim Coal. for Clean Env't v. Texas Comm'n on Envtl. Quality*, 657 S.W.3d 382, 399 (Tex. App.—El Paso 2022, no pet.) (emphasis in original). The record is clear—the Commission considered the availability of service by

Georgetown when determining need for the wastewater permit. The City simply disagrees with the result of that consideration.

## B. The City misinterprets the plain language of the statute's policy and regionalization provisions.

The City ignores the Texas Water Code's plain language and long-held canons of construction such as reading the statute as a whole and in context. But the Court should first look to the plain meaning of the statute's words, considering the context and framework of the statute as a whole. *TJFA, L.P. v. Texas Comm'n on Envtl. Quality*, 632 S.W.3d 660, 667 (Tex. App.—Austin 2021, pet. denied). "We interpret statutes according to their plain language, but in context—not isolation." *State v. Hollins*, 620 S.W.3d 400, 407 (Tex. 2020); *see In re Dallas County,* 697 S.W.3d 142, 158 (Tex. 2024).

### i. The City misreads the plain language of Texas's policy on water quality.

First, the City reads a phrase out of context in section 26.003, the Texas Water Code's overall policy regarding water quality, and suggests that "all reasonable methods" would require impossibility or formal municipal denial in order for the Commission to conclude that service is not available from the City and grant AIRW's permit. Tex. Water Code

8

§ 26.003. But this is not what the statute provides. As an initial matter, section 26.003 is the State's water quality policy. Read in context, the phrase "and use all reasonable methods to implement this policy" is referring to implementing the water quality policy as a whole and authorizes the Commission to use multiple methods to accomplish the State's goal of protecting water quality. Tex. Water Code § 26.003.

Additionally, every word the Legislature uses has meaning. *See* Tex. Gov't Code § 311.021(a); *Sanchez v. State,* 499 S.W.3d 438, 442 (Tex. Crim. App. 2016) (courts presume that "every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible"). The Legislature's use of the word "reasonable" here matters. "Reasonable" logically eliminates unreasonable but technically possible methods.

Moreover, the words "all reasonable" in section 26.003 modifies methods of implementation. If "use all reasonable methods to implement" is applied to regionalization implementation, the Commission satisfies this standard. However, the City's argument completely ignores that the Commission has implemented regionalization policy by multiple methods and instead focuses on how the Commission has *applied* the policy in this

9

case. The Commission primarily implements regionalization through its adopted rules that establish designated regional areas served exclusively by designated regional entities. *See* 30 Tex. Admin. Code ch. 351; *see* Tex. Water Code § 26.081. The Commission expressly found in this case there was no applicable regional area or entity. SCR-AR 66 at FOF 49.

Additionally, prior to water and wastewater ratemaking authority being transferred to the Public Utility Commission of Texas, the Commission also implemented regionalization policy through its utility certification process which designated a specific service area for each utility. *See e.g.* AR 99; *see also* Acts 2013, 83rd Leg., ch. 170 (H.B. 1600), § 2.42, eff. Sept. 1, 2013.[2]

Relevant here, the Commission implements regionalization policy outside of regional areas today on a case-by case-basis for each permit application, as described in its webpage guidance. SCR-AR 98. The

---

[2] SCR-AR 99 is a 2003 Commission's Water Supply Division's guidance document related to regionalization for public water systems and new water and wastewater CCNs. The Commission lost its jurisdiction over CCNs to the Public Utility Commission of Texas in 2014, making the Water Supply Division's guidance document largely obsolete. *See* Tex. Water Code § 13.241(d) ("Before the utility commission grants a new certificate of convenience and necessity for an area which would require construction of a physically separate water or sewer system, the applicant must demonstrate to the utility commission that regionalization or consolidation with another retail public utility is not economically feasible."). The 2003 guidance document is no longer available as an active publication on the Commission's website.

reasonableness of these methods is undisputed; the City has not challenged the case-by-case-approach as unreasonable but instead challenges the Commission's application of this approach to AIRW's permit application proceeding.

### ii. The City misreads section 26.0282 and improperly attempts to restrict the discretion granted to the Commission by the Legislature.

A plain language reading of section 26.0282 leaves the Commission with discretion to determine need for the permit, including availability of service, and nothing in the statutory language mandates an outcome to the agency:

> *In considering* the issuance, amendment, or renewal of a permit to discharge waste, *the commission may* deny or alter the terms and conditions of the proposed permit, amendment, or renewal based on consideration of need, including the expected volume and quality of the influent and the availability of existing or proposed areawide or regional waste collection, treatment, and disposal systems not designated as such by commission order pursuant to provisions of this subchapter. . . .

Tex. Water Code § 26.0282 (emphasis added). In contrast, the City asks to this Court to limit the Commission's discretion and dictate what "availability" means, i.e. to require the municipal 'political process' and to conflate 'unavailable' with formal denial. The City further seeks to

11

have its view strictly applied as requiring permit denial. This is not what the Legislature intended, and it would be a violation of the doctrine of separation of powers to construe the statute in this manner and re-weigh the evidence to arrive at the City's preferred outcome.

Contrary to the clear statutory language, the City also reads section 26.0282 as restricting the scope of the Commission's considerations, rather than providing discretion to consider need in permitting. Again, the restrictions advocated by the City are not statutory. *See Whittington*, 384 S.W.3d at 785 (construing plain language of Local Government Code and rejecting argument equating "necessary" with "absolutely necessary").

### iii. The City's cost concept is unduly narrow and inappropriately restricts the Commission's discretion in considering regionalization.

The City argues that the controlling cost question is the comparison of the cost of connection versus the cost of constructing the facility. While this is a valid consideration, the Commission determined that the two costs were only separated by approximately $300,000 and costs did not compel denying the permit for regionalization considerations. *See* SCR-AR 66 FOFs 43-46. The Commission considered the evidence presented

on other costs, including "the higher property tax rate inside the City than outside it in the unincorporated area and the City's condition of annexation to connect to its system," and the fact that "connecting carries with it an approximately $20 million cost due to diminution in property value." SCR-AR 66 at FOF 45; *see* SCR-AR 74 (Application) at pdf 105-108 (also in the record as SCR-AR 107 and SCR-AR 108); SCR-AR 87 (Perkins Direct) at 13; SCR-AR 93 (Colliers appraisal report); SCR-AR 94 (Tuckfield Direct) at 24-25.

While Finding of Fact No. 45 is supported by evidence, including information in the application, the City did not present testimony to counter the tax rate question or the diminution in value figures, despite evidence being required under the Government Code to rebut the prima facie demonstration that all state legal and technical requirements are met. *See* Tex. Gov't Code § 2003.047(i-1)-(i-3); SCR-AR 74 (Application) at pdf 105-108. Instead, the City incorrectly argued that the Commission has no authority to consider property value changes, and the projected costs were speculative. City's Brief at 10, 25-26. But the Water Code does not limit the Commission's consideration of cost as the City seeks, and its argument is rooted in a misunderstanding of cost concepts.

13

The City claims the $20 million diminution in property value related to the higher property tax rate inside the city is not a cost and cannot be considered. City's Br. at 25-27; *see* SCR-AR 66 at FOF 45. Contrary to the City's argument, changes in property tax rates and valuation are changes to a fixed operating cost and properly considered. "Fixed costs are commonly related to recurring expenses not directly related to production, such as rent, interest payments, insurance, depreciation, and property tax."[3] An increase in tax valuation or tax rate is considered an increased cost because it directly affects the amount of taxes that must be paid.[4] Here, AIRW witness Janet Sims provided the Commission with information that the annual cost of property taxes is an operating expense that would not otherwise be incurred, and zoning restrictions and other costs of connection further add to the total cost of service. SCR-AR 108; *see* SCR-AR 180 at 368:20-24.

---

[3] Adam Hayes, *Fixed Cost: What it is and How its Used in Business*, Investopedia (May 22, 2025) https://www.investopedia.com/terms/f/fixedcost.asp#:~:text=Fixed%20costs%20inclu de%20any%20number,%2C%20depreciation%2C%20and%20some%20utilities.

[4] The change in valuation may also represent an opportunity cost difference between two options like in this case and is therefore also an economic cost. *See* Tejvan Pettinger, *Types of Costs,* Economics Help (June 1, 2019)*, https://www.economicshelp.org/blog/4890/economics/types-of-costs/.

Further, AIRW limited its argument and proof on lost value of the property to tax impact; it did not seek include in its $20 million figure any other impact when sold beyond taxes. SCR-AR 59 at 43. "Rather, AIRW's estimate of a $20 million diminution in property value was attributable solely to a higher property tax rate inside the City than outside it in the unincorporated area." *Id.*

Additionally, there is no authority limiting cost considerations in the Commission's regionalization analysis, and the record evidence, including testimony by credible witnesses, supports the Commission's findings and conclusions. *See* Appellant TCEQ's Br. at 33-34.

Regardless of whether the $20 million tax-related diminution in value is considered a "cost," the Commission's consideration of this impact is consistent with its guidance on regionalization, as it could also be considered as an "other relevant factor" under the same listed scenario. SCR-AR 98 at 2; *see N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020); *R.R. Comm'n of Texas v. City of Austin*, 524 S.W.2d 262, 279 (Tex. 1975) ("The courts are not bound by the reasons given by Boards or Commissions in their orders, or by any particular ground made the basis of their rulings, provided there is a valid basis for what they

15

do.") (citation omitted). The Commission acted within its discretion to consider the $20 million cost, consistent with its published guidance, and based on the record evidence before it.

The City incorrectly argues that the Commission does not have jurisdiction to consider property value in considering regionalization. The City grasps at straws, citing to a commission guidance page on public comments for proposed permits and decades-old documents from inapplicable solid waste permitting proceedings and obsolete regulatory schemes. City's Br. at 27-29; *See Supra* at 12-13. None apply here or compel finding reversible error.

But the City conflates two distinct questions: 1) *Regionalization*—how the agency might evaluate costs associated with regionalization (which the City concedes the Commission has the authority to consider);[5] and 2) *Impact of the Permitted Activity*—how a proposed wastewater treatment plant might lower a nearby landowner's property value (which the Commission indisputably does not have jurisdiction over) (as distinguished from effect on aesthetic interests, use and enjoyment and other factors). In Finding of Fact No. 45, the Commission is not

---

[5] City's Br. at 8, 10.

considering property value impact for landowners or the applicant when determining the impact of the permitted activity. SCR-AR 66 at FOF 45. It is instead considering this cost as part of its regionalization determination, per its authority granted under Texas Water Code. section 26.0282.

### iv. The Commission's Order is based on substantial evidence.

The City makes two contentions that misstate judicial review under the substantial evidence rule. Tex. Gov't Code § 2001.174. First, the City states that "[w]hen a TCEQ's decision to grant a wastewater discharge permit is reviewed for substantial evidence, it is subject to a de novo review." City's Br. at 6. The City is mistaken; it is not the Commission's decision that is subject to de novo review. *Compare* Tex. Gov't Code § 2001.174 (Review Under Substantial Evidence Rule) *with* 2001.173 (Trial De Novo Review). Rather, de novo review of a question of law, i.e. whether there is a statutory grounds for reversal, is not the same as de novo review of the Commission's decision. As the Court in *Save Our Springs* noted, "[u]nder the APA, a court reviewing an agency's decision in a contested case 'may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to

17

agency discretion.'" *Save Our Springs All., Inc. v. Texas Comm'n on Envtl. Quality*, 713 S.W.3d 308, 320 (Tex. 2025), reh'g denied (June 20, 2025) (quoting Tex. Gov't Code § 2001.174).

Second, the City misunderstands the substantial evidence standard itself. The City argues that "substantial evidence in the administrative record indicates that there is available capacity at an existing [wastewater treatment plant]. City's Br. at 15. But that's not the relevant inquiry. The question is not whether the City's case was supported by substantial evidence. The substantial evidence standard asks if the "administrative findings, inferences, conclusions, or decisions" of the Commission are "reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." Tex. Gov't Code § 2001.174(2)(E). The "evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.,* 665 S.W.2d 446, 452 (Tex. 1984). Here, the Commission's Order is supported by ample evidence, as reflected in the proposal for decision and the Order itself. The Court should not now re-weigh that evidence.

**C.     The Commission properly exercised its discretion and appropriately considered regionalization.**

"Only in narrow circumstances will an agency decision be reversed as 'arbitrary and capricious' when it is supported by substantial evidence." *Texas Comm'n on Envtl. Quality v. San Antonio Bay Estuarine Waterkeeper*, 714 S.W.3d 270, 282 (Tex. App.—[15th] 2025, pet. filed) (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.,* 665 S.W.2d 446 (Tex. 1984)). In the case at issue, the Commission acted rationally, properly exercising its considerable discretion when considering the regionalization question, consistent with the Water Code and its own published guidance.

Under the Government Code, if an agency's final order is supported by substantial evidence, the agency acts arbitrarily or abuses its discretion only if it "fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations." *See Save Our Springs* 713 S.W.3d at 320; Tex. Gov't Code § 2001.174(2)(F). None of these exist here.

### i. The Commission did not abuse its discretion or inappropriately consider irrelevant facts or non-statutory criteria in reaching Finding of Fact No. 45.

The arbitrary and capricious standard looks at consideration of relevant *factors* not facts. The "relevant fact" consideration is a substantial evidence question, and the weight given to the evidence is for the Commission to decide. Tex. Gov't Code § 2001.174; *Maverick Cnty.*, 642 S.W.3d at 544. The Commission acted properly in considering the record evidence. *See Supra* at 15-16; Appellant TCEQ's Br. at 33-34.

Further, the City's argument that the Commission improperly considered "non-statutory criteria," and abused its discretion when considering the $20 million diminution in value is without merit. The Texas Water Code provides the Commission with broad authority to determine need and availability when considering AIRW's permit. The Commission's guidance reflects this broad authorization, allowing for consideration of "other relevant factors" and cost considerations. *See* SCR-AR 98 at 2; *Supra* at 17-19.

It would be unreasonable for the Commission to ignore the intended recipients of the wastewater service—the proposed development of 880 homes—and inconsistent with section 26.0282 which authorizes the

Commission to consider need in in wastewater permit cases. *See* SCR-AR 66 at FOF 2; SCR-AR 74 at pdf 4. The effect of the City's required conditions for service would nullify the proposed development that is seeking wastewater service. Nothing in the statute suggests it should be read as prohibiting the Commission from taking these costs into account in its regionalization consideration.

ii.    **The Commission did not act arbitrarily or fail to consider relevant facts or mandatory factors.**

The weight given to evidence is for the Commission to decide. Courts consider the "relevant fact" question only in the context of review under the substantial evidence standard. Tex. Gov't Code § 2001.174; *Maverick Cnty.*, 642 S.W.3d at 544. And the Commission's findings clearly indicate that the Commission did consider the availability question and the relative cost of connection versus building the proposed facility. *See* FOFs 40-44, 51-52. Texas Courts look to the final order itself to determine what considerations it is based upon. *Tex. Utils. Elec. Co. v. Pub. Util. Comm'n*, 881 S.W.2d 387, 416 (Tex. App.—Austin 1994), *aff'd in relevant part*, 935 S.W.2d 109 (Tex. 1996).

Further, the City fails to explain what considerations are regionalization "factors" and also fails to explain what factors in

21

regionalization are mandatory (versus permissive) or provide support for such contentions. *See Save Our Springs,* 713 S.W.3d at 320 (agency acts arbitrarily "if it fails to consider a mandatory factor . . . ."); *City of El Paso v. Pub. Util. Comm'n of Texas*, 883 S.W.2d 179, 184 (Tex. 1994) (Agency decision is arbitrary if agency "failed to consider a factor the Legislature directs it to consider").

The Water Code sections referenced by the City do not contain mandatory criteria for consideration. The Court in *Save Our Springs* considered and rejected similar contentions regarding section 26.027 of the Water Code: "SOS erroneously describes section 26.027 of the Water Code as establishing mandatory criteria that TCEQ must consider in conducting an antidegradation review. It plainly does not." *Save Our Springs,* 713 S.W.3d at 328. There, the Texas Supreme Court clarified that it was not a close call—that section 26.027 "broadly authorizes" or "generally allows" the Commission to deny a permit that is contrary to any rule or law, "but it neither states nor directs TCEQ to consider any criteria in *granting* a permit." *Save Our Springs,* 713 S.W.3d at 329.

The Court also illustrated the difference by discussing *Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.*:

> The Legislature directed the agency to establish criteria for determining whether to grant a certificate of need for a proposed project [and] . . . specifically identified five criteria that "the commission must include" in its rules for making that determination. We held that those mandated criteria . . . are the type of factors that fall within the scope of fact findings that must be accompanied by a statement of underlying facts. In contrast, the Legislature's requirement that the agency *consider* six additional factors in *developing* additional criteria did not. . . . section 26.027 of the Water Code does not mandate any specific findings, criteria, or factors for issuing a discharge permit.

*Save Our Springs*, 713 S.W.3d at 329 (citing *Charter Med.-Dall.*, 665 S.W.2d at 449-450, 451). But unlike the statute in *Charter Med.-Dall.,* neither section 26.003 nor section 26.0282 include mandatory criteria.

Additionally, here, the Commission's Order expressly demonstrates in its conclusions of law that each of the City's cited statutory provisions were considered. SCR-AR 66 at COLs 10-11; *see Id.* at FOF 33. The City simply disagrees with the outcome.

### iii. The Commission's Order complies with all statutory requirements.

The Commission applies its case-by-case approach to regionalization outside of regional areas (and outside the utility

23

certification context) by requiring permit applicants to have explored service from potentially available nearby providers; requiring information and review in the application process; referring the topic as an issue to be addressed in contested case hearing; and by considering the record developed as a result. Tex. Gov't Code §§ 2001.141(c), 2003.047(e),(f),(l),(m); *see* Tex. Gov't Code § 2001.060; SCR-AR 98. The *outcome of applying* this case-by-case approach is not the equivalent of a "method of implementation" under the State's water quality policy; it is simply the result from one method of implementation (case-by-case)– which has not been challenged here.

## II. The City provides no valid basis for finding reversible error. The Commission properly exercised its authority, ensuring that Texas water quality standards are met and granting the permit in an order supported by substantial evidence.

The City again invites the Court to reweigh the evidence and reassess the credibility of the witnesses, arguing that the evidence before the Commission was insufficient to support its findings that the permit meets the Texas Surface Water Quality Standards and is protective of water quality, existing uses, and public health. *See* SCR-AR 66 at FOF 26-32, 55-61, 65-70, 74-75. The City's argument is improper and without merit.

**A. The City failed to overcome evidence supporting the application with credible controverting evidence.**

The City did not provide credible evidence challenging the draft permit's compliance with water quality standards and fails to rebut this point now with any explanation, simply stating that this "is not the case." City's Br. at 32. But it is the case. As the administrative law judges explained, beyond a hypothetical, the City did not provide any actual evidence to show that the permit would not be protective of the health of nearby residents. SCR-AR 59 (PFD) at 49; *see id.* at 47-48 ("The city's arguments were conclusory and unverifiable due to a lack of underlying data to support its conclusions.")

Further, with regard to the City's contentions on inadequate frequency of E. coli sampling, Commission agreed with the following analysis of the administrative law judges: 1) that the permit's E. coli sampling frequency is sufficient, with no need for a variance from the standardized monitoring for the facility (SCR-59 at 49); 2) that the evidence showed that the "permit's requirements for E. coli limitations and chlorine residual, as well as monitoring and sampling frequency, are sufficient to protect human health" (*Id.*); and 3) the operational

25

requirement protections sufficient to ensure protection of water quality. (*Id.* at 74). *See also* SCR-AR 66 at FOF 12-13, 55-59, 74-75.

The City was required to present evidence in the contested case to rebut the prima facie demonstration that all requirements are met, and the permit is protective of human health. Tex. Gov't Code § 2003.047(i-1)-(i-2). Subsection (i-2) states "a party may rebut the presumption in paragraph (1) of this subsection **by presenting evidence** regarding the referred issues demonstrating that the draft permit violates a specifically applicable state or federal legal or technical requirement." *Id.* (emphasis added) Despite this clear statutory requirement, the City did not do so.

Additionally, the record evidence, including the application itself and other documents, as well as the testimony of four expert witnesses demonstrates that the antidegradation review and the permit itself satisfies the applicable water quality standards and support the Commission's Order. *See* SCR-AR 71-77 (prima facie demonstration), 84 (Price Direct), 87 (Perkins Direct), 111 (ED's Response to Comments), 124 (Cooper Direct), 127 (Lueg Direct), and 129 (TCEQ Implementation Procedures); *see also* Appellant TCEQ's Br. at 43-48.

Moreover, the City completely ignores the testimony of expert witness Gordon Cooper. Mr. Cooper testified that the permit requires testing for total suspended solids, ammonia nitrogen, total phosphorus, E. coli, and BOD,[6] with testing frequencies determined by rule in section 319.9(a), which sets out appropriate monitoring requirements for this type of facility. 30 Tex. Admin. Code § 319.9(a), Table 1; SCR-AR 124 (ED Ex. GC-1) at 10; SCR-AR 181 (Tr.) at 670. Mr. Cooper also testified that the AIRW draft permit complies with all applicable Commission rules and regulations and therefore is protective of water quality. SCR-AR 124 (ED Ex. GC-1) at 13.

Contrary to the City's contentions, expert witness Jenna Lueg considered the relevant aesthetic values in her review. *See* SCR-AR 127 at 9; SCR-AR 130 (Lueg's JL-4) at 3-4. The Commission's "Procedures to Implement the Texas Surface Water Quality Standards" (IPs)[7] provides more insight into aesthetic parameters, listing such things as turbidity

---

[6] Biochemical Oxygen Demand.

[7] SCR-AR 129; *see* 30 Tex. Admin. Code §§ 307.3(a)(67) (defining standards implementation procedures), 307.5 (antidegradation policy and implementation procedures); Water Quality Division, Procedures to Implement the Texas Surface Water Quality Standards (RG-194) (June 2010) (IPs), *see also* Tex. Water Code § 26.023 ("The commission by rule shall set water quality standards for the water in the state . . . [and] has the sole and exclusive authority to set water quality standards for all water in the state").

and stating that such parameters "may also" be addressed with narrative criteria along with the other assessments performed under the IPs for evaluating impacts on water quality. SCR-AR 129 (IPs) at 20 and 57. Ms. Lueg's testimony and exhibits, as well as the draft permit, indicate these were taken into account. *See* SCR-AR 130 at 3-4; SCR-AR 127 at 9; *see e.g.,* SCR-AR 73 at 0002 (prohibiting discharge of floating solids, visible foam or visible oil).

Further, the City misreads a statement made by Ms. Lueg on land uses, implying that her consideration was lacking. *See* City's Br. at 34-35. However, the cited statement indicates appropriately that Ms. Lueg does not always look at what a nearby future development "will become" but instead focuses circumstances at the time of the application and "existing uses" as required by the Commission's rules. SCR-AR 181 at 696:3-4, 700:21-701:13 (Lueg Cross); *see* SCR-AR 181 at 684 (Cooper Cross); 30 Tex. Admin. Code § 307.5(b).

Moreover, the City provided no evidence to support its claim that the green space is recreational or that it should be considered a park. City's Br. at 37. In contrast, AIRW's witness testified that the future green space is not a park. SCR-AR 180 at 417:20-418:8 (Sims Redirect);

28

*see also* SCR-AR 59 at 51-52 (preponderance of the evidence did not show discharge impermissibly will go into water that crosses or abuts any park, playground, or schoolyard).

Section 26.030(b) does not use the term "park" in isolation; it is listed in a series of three locations: "park, playground, or schoolyard" the latter two indisputably being designated areas of play. "Park" should be read in context with its associated words. Tex. Gov't Code § 311.011(a); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("[N]oscitur a sociis, or 'it is known by its associates' directs that similar terms be interpreted in a similar manner"). Because the City points to no evidence that the future green space is intended to be recreational (as opposed to aesthetic or a noise buffer from a nearby roadway) or is intended to be used instead as a park, interpreting section 26.030 to apply to AIRW's permit would be counter to the statutory context and legislative intent.

The City's contention that the review of existing uses was insufficient to support the Commission's Order also fails. City's Br. at 35. Specifically, the City contends that ponds used for watering cattle were not considered. However, as AIRW's expert witness Janet Sims testified

on cross-examination, a receiving pond's use, whether it is used for watering cattle or in a residential neighborhood is protected by this permit's standards which are designed to protect human health. SCR-AR 180 at 393:2-24.

Further, impact on aquatic life and terrestrial life such as livestock was considered during the permit review, and these considerations were directly addressed in the Executive Director's response to public comments. SCR-AR 111 (ED's Response to Comments) at 10. The Executive Director's response also confirmed that operations following the permit limitations will be safe for terrestrial and aquatic life. *Id.* at 10-11.

The City also contends that the permit does not satisfy odor prevention requirements because County Road 111 is being moved and will result in the 150-foot buffer zone requirement not being met. The City's Br. at 36. However, record evidence supports the Commission's Order. *See* SCR-AR 74 at pdf 16, 70; SCR-AR 87 at 7:13-16; SCR-AR 124 at 11:5-11; SCR-AR 180 at 417-18, 452:10-14; *see also* SCR-AR 71-77.

AIRW witness Mark Perkins confirmed on cross-examination that the 150-foot requirement would still be met even after the road is moved

30

because of where property lines are located and as shown on the map in evidence, there is more land between where the road currently is and where the nearby ranch is located. SCR-AR 180 at 452:10-14; *see id.* at 452-454.

## B. The City's arguments regarding the sufficiency of AIRW's application provide no basis for reversal here.

The City complains of alleged insufficiencies with the AIRW's permit application, ignoring that the record before the Commission was more fully developed through the contested case process.

Testimony established that the application went through both an administrative and a technical review, which provides Commission staff an opportunity to determine whether any portions of the application are missing information that is needed to complete review. SCR-AR 124 (Cooper Direct) at 11. Mr. Cooper also explained that staff also has the opportunity during this review process to request additional information, and that staff did so in this case. *Id.* As a result of this process, the application was declared administratively and technically complete. *Id.* Further, the City's contentions ignores that the record supporting the Commission's Order is not limited to the application; it was further developed in the contested case hearing process.

The City is also dissatisfied that the Westinghouse affiliates and the presumptive future operator, Jonah Water Special Utility District (Jonah), were not included on the application and permit. City's Br. at 39. But the application correctly identified AIRW as the current owner of the facility and the permit was issued only to AIRW. SCR-AR 66 at FOF 6 and pdf 18 (Permit).

Jonah is not the permittee, nor is it currently the owner or operator of the facility. SCR-AR 43 (Non-Standard Service Agreements (NSSAs) contemplating *future* transfer of ownership/operator responsibilities to Jonah). If, in the future, Jonah wishes to become the owner and operator of the facility to fulfill its obligations under the NSSAs, it will have to formally apply to the Commission to transfer the permit. 30 Tex. Admin. Code § 305.64(a) (Permits are "issued in personam and may be transferred only upon approval of the commission").

This principle is reiterated in the permit itself in Condition 5:

> Prior to any transfer of this permit, Commission approval must be obtained. The Commission shall be notified in writing of any change in control or ownership of facilities authorized by this permit . . . . A permit may be transferred only according to the provisions of 30 TAC § 305.64 (relating to Transfer of Permits) and 30 TAC

§ 50.133 (relating to Executive Director Action on Application of WQMP update).

SCR-AR 66 (Order and Permit) at pdf 29. Additionally, the Commission's Order plainly states that it is granting AIRW's application (not Jonah's), and the permit is issued to AIRW alone. SCR-AR 66 (Order and Permit) at 17, 18. Because the Commission did not authorize Jonah to discharge under the permit approved in the underlying proceeding, AIRW was not required to list Jonah as a co-applicant.

Similarly, there was no need to list the Westinghouse affiliates as co-applicants. If the entities are one and the same, there is no need to do so. *Cf.* 30 Tex. Admin. Code § 305.43 (requiring owner and operator to be listed on permit application if the facility is owned by one person and operated by another and special circumstances exist). This is not a case where the facility owner and operator are different entities. As the administrative law judges noted, "no parties disputed that 600 Westinghouse is an affiliate of AIRW and that the entities are under common control." SCR-AR 59 at 60.

Additionally, the record evidence demonstrates that the Commission staff had sufficient information to evaluate this aspect of the application, including information from AIRW on the three related

33

companies, what property they owned, their relationship to the proposed development and facility, and to each other. *See e.g.* SCR-AR 74 at 105-106; SCR-AR 107; SCR-AR 181 at 639:24-6:40:10.

The City's attempts to undermine the Commission's Order by pointing to perceived application deviations amount to little more than a disagreement about what the City believes AIRW *should have* provided and fails to provide a basis for reversal. Courts have long held that the agency is tasked with weighing the evidence before it. The Commission did that here, and the district court improperly reversed the Commission's Order. *See Maverick Cnty.*, 642 S.W.3d at 544.

## CONCLUSION AND PRAYER

The permit granted by the Commission satisfies each regulatory requirement, including regionalization, and promotes the maintenance of water quality through its terms. Substantial record evidence supports the Commission's Order granting the AIRW's permit. Based upon the evidence presented, the Commission acted reasonably in granting the AIRW's permit.

For these reasons, the Texas Commission on Environmental Quality respectfully prays that this Court reverse the district court's

34

judgment and render judgment affirming the Commission's Order in all respects. The Commission further prays for such other and further relief to which it may be entitled.

Respectfully submitted,

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | KELLIE E. BILLINGS-RAY<br>Chief, Environmental Protection Division |
| BRENT WEBSTER<br>First Assistant Attorney General | */s/ Sara J. Ferris*<br>SARA J. FERRIS |
| RALPH MOLINA<br>Deputy First Assistant Attorney General | Assistant Attorney General<br>State Bar No. 50511915<br>Sara.Ferris@oag.texas.gov |
| AUSTIN KINGHORN<br>Deputy Attorney General for Civil Litigation | OFFICE OF THE ATTORNEY GENERAL OF TEXAS<br>P.O. Box 12548 (MC-066)<br>Austin, Texas 78711-2548 |
| WILLIAM PETERSON<br>Solicitor General | (512) 463-2012<br>(512) 320-0911 (Fax) |
| WILLIAM F. COLE<br>Principal Deputy Solicitor General | ***Attorneys for Texas Commission on Environmental Quality*** |

## CERTIFICATE OF COMPLIANCE

I certify that the Reply Brief of Appellant, Texas Commission on Environmental Quality, contains 6,776 words and therefore complies with the word limit found in Tex. R. App. P. 9.4(i)(2)(B).

*/s/ Sara J. Ferris*
SARA J. FERRIS

## CERTIFICATE OF SERVICE

I certify that the Reply Brief of Appellant, Texas Commission on Environmental Quality, was electronically filed with the Clerk of the Court using the electronic case filing system of the Court, and that a true and correct copy was served upon counsel for each party of record, listed below, by electronic service or email on September 19, 2025:

John J. Carlton
john@carltonlawaustin.com
Kelli A. N. Carlton
kelli@carltonlawaustin.com
Erin R. Selvera
erin@carltonlawaustin.com
Michael Parsons
michael@carltonlawaustin.com
THE CARLTON LAW FIRM, PLLC
4301 Westbank Dr., Suite B130
Austin, TX 78746-6568

***Attorneys for Jonah
Water Special District***

Andrew B. Davis
andrew@lkcfirm.com
William T. Thompson
will@lkcfirm.com
Todd Disher
todd@lkcfirm.com

William A. Faulk, III
cfaulk@spencerfane.com
Carlota Hopkins-Baul
chbaul@spencerfane.com
Maris M. Chambers
mchambers@spencerfane.com
SPENCER FANE, LLP
816 Congress Ave., Suite 1200
Austin, TX 78701

Patricia Erlinger Carls
tcarls@tcarlslaw.com
LAW OFFICE OF PATRICIA
ERLINGER CARLS
3100 Glenview Ave.
Austin, TX 78703

***Attorneys City of Georgetown, TX***

36

LEHOTSKY KELLER COHN, LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701

Helen S. Gilbert
hgilbert@bartonbensonjones.com
BARTON BENSON JONES, PLLC
7000 N. MoPac Expwy, Suite 200
Austin, TX 78731

Edmond McCarthy
Ed@ermlawfirm.com
MCCARTHY & MCCARTHY, LLP
1122 Colorado St., Suite 2399
Austin, TX 78701

***Attorneys for AIRW 2017-7, L.P.,
600 Westinghouse Investments,
LLC, And 800 Westinghouse
Investments, LLC***

/s/ Sara J. Ferris
SARA J. FERRIS

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Colton Halter on behalf of Sara Ferris
Bar No. 50511915
colton.halter@oag.texas.gov
Envelope ID: 105857371
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant TCEQ
Status as of 9/19/2025 4:37 PM CST

Associated Case Party: City of Georgetown

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Patricia Carls | 3813425 | tcarls@tcarlslaw.com | 9/19/2025 4:34:50 PM | SENT |
| Carlota Hopinks-Baul | 24094039 | chbaul@spencerfane.com | 9/19/2025 4:34:50 PM | SENT |
| Skye Masson | | Skye.Masson@georgetowntexas.gov | 9/19/2025 4:34:50 PM | SENT |
| Kelsey Parker | | kparker@spencerfane.com | 9/19/2025 4:34:50 PM | SENT |
| Maris Chambers | | MChambers@spencerfane.com | 9/19/2025 4:34:50 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Thompson | 24088531 | will@lkcfirm.com | 9/19/2025 4:34:50 PM | SENT |
| Edmond McCarthy | 13367200 | ed@ermlawfirm.com | 9/19/2025 4:34:50 PM | SENT |
| William Faulk | 24075674 | cfaulk@spencerfane.com | 9/19/2025 4:34:50 PM | SENT |
| John Carlton | 3817600 | john@carltonlawaustin.com | 9/19/2025 4:34:50 PM | SENT |
| Michael Parsons | 24079109 | michael@carltonlawaustin.com | 9/19/2025 4:34:50 PM | SENT |
| Helen Gilbert | 786263 | hgilbert@bartonbensonjones.com | 9/19/2025 4:34:50 PM | SENT |
| Colton Halter | | colton.halter@oag.texas.gov | 9/19/2025 4:34:50 PM | SENT |
| Todd Disher | | todd@lkcfirm.com | 9/19/2025 4:34:50 PM | SENT |
| Kelli Carlton | | kelli@carltonlawfirm.com | 9/19/2025 4:34:50 PM | ERROR |
| Erin Selvera | | erin@carltonlawfirm.com | 9/19/2025 4:34:50 PM | ERROR |

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Colton Halter on behalf of Sara Ferris
Bar No. 50511915
colton.halter@oag.texas.gov
Envelope ID: 105857371
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant TCEQ
Status as of 9/19/2025 4:37 PM CST

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kellie E.Billings-Ray | | Kellie.Billings-Ray@oag.texas.gov | 9/19/2025 4:34:50 PM | SENT |
| Erin  K.Snody | | Erin.Snody@oag.texas.gov | 9/19/2025 4:34:50 PM | ERROR |
| Sara Ferris | | sara.ferris@oag.texas.gov | 9/19/2025 4:34:50 PM | SENT |
| Bobby Salehi | | bobby.salehi@tceq.texas.gov | 9/19/2025 4:34:50 PM | ERROR |
| Evan Greene | | evan.greene@oag.texas.gov | 9/19/2025 4:34:50 PM | SENT |

Associated Case Party: AIRW 2017-7, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Davis | | andrew@lkcfirm.com | 9/19/2025 4:34:50 PM | SENT |

Associated Case Party: AIRW 2017-7, L.P.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Yahaira De Lara | | ydelara@bartonbensonjones.com | 9/19/2025 4:34:50 PM | SENT |
| Michael Cotton | | michael@lkcfirm.com | 9/19/2025 4:34:50 PM | ERROR |

Associated Case Party: Jonah Water Special Utility District

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| John Carlton | | john@carltonlawfirm.com | 9/19/2025 4:34:50 PM | ERROR |